EMILY J. FULLER, Administratrix, etc., Respondent, *v.* HUGH J. JEWETT, Receiver, etc., Appellant.

An act or duty which a master is bound to perform for the safety and protection of his servant cannot be delegated so as to exonerate him from liability for an injury to the servant caused by an omission to perform it, or by its negligent performance; and this, whether the mis-feasance or non-feasance is that of a superior or inferior officer, agent or servant, to whom the doing of the act or the performance of the duty has been committed. The act or omission is that of the master also, irrespective of the question whether it was or was not practicable for the master to act personally, or whether he did or did not do all that he personally could do to secure the safety of the servant.

The duty of maintaining machinery in proper repair for the protection of employees operating it devolves upon the master, and he is liable for injuries resulting from a failure to perform it.

Accordingly, *held,* where an engineer upon a railroad locomotive was killed by an explosion of a boiler which had been for some time out of repair, and had been frequently reported and sent to the repair shop for repairs, that defendant who was operating the road was not excused from liability by the facts that there was no negligence on his part in the employment of a superintendent of repairs, or in omitting to make proper regulations, that the master mechanic having charge gave proper instructions for the thorough examination and repair of the engine, and that the negligence causing the accident was that of the mechanics directed to make the repairs.

(Argued January 22, 1880; decided February 3, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought against the defendant as receiver, etc., of the Erie Railway, to recover damages for the death of Jefferson Fuller, plaintiff's intestate, alleged to have been caused by defendant's negligence.

The facts appear sufficiently in the opinion.

*C. F. Brown* and *L. E. Carr*, for appellant. The duty which the master owes to his servant, to keep in his employment competent servants only, and to furnish suitable and reasonably safe machinery and appliances, is not an absolute

one. The master is simply bound to exercise due care to that end. (Wood's Law of Master and Servant, 696; *Hacket v. Middlesex Manfg. Co.*, 101 Mass., 101; *Ryan* v. *Fowler*, 24 N. Y., 410; *Wright* v. *N. Y. C. R. R. Co.*, 25 id., 562; *Warner* v. *Erie R. R. Co.*, 39 id., 468; *Faulkner* v. *Erie Railway Co.*, 49 Barb., 324; *Malone* v. *Hathaway*, 64 N. Y., 5; see note to this case, 21 Am. Rep., 579; *Tinney* v. *B. and A. R. R. Co.*, 62 Barb., 218; *McMillan* v. *S. and W. R. R. Co.*, 20 id., 449; *Davis* v. *Detroit, etc., R. R. Co.*, 4 Am. Rep., 364; *Rose* v. *B. and A. R. R. Co.*, 58 N. Y., 217; *Chapman* v. *Erie R. R. Co.*, 55 id., 579; *Laning* v. *N. Y. C. R. R. Co.*, 49 id., 521; *Flike* v. *B. and A. R. R. Co.*, 53 id., 550; *C. C. and I. C. R. R. Co.* v. *Troesch*, 18 Am. Rep., 579; *Wonder* v. *B. and O. R. R. Co.*, 3 id., 143; *McMillan* v. *Saratoga and Washington R. R. Co.*, 20 Barb., 452; *Keegan* v. *Western R. R. Co.*, 4 Seld., 175; Story on Agency, § 45, d and e; Parsons on Contracts, 528; *Leonard* v. *Collins*, 70 N. Y., 90; *Allen* v. *New Gas Co.*, 17 Eng. Rep. [Moak's notes], 420–424; *Hofnagle* v. *N. Y. C. and H. R. R. R. Co.*, 55 N. Y., 608.) The burden is upon the plaintiff to establish negligence of the master and his own care. The presumption is that the master discharged his duty, and this presumption must be fairly overcome by proof of his personal fault or negligence. (*McMillan* v. *S. and W. R. R. Co.*, 20 Barb., 449; *Rose* v. *B. and A. R. R. Co.*, 58 N. Y., 217; *Wright* v. *N. Y. C. R. R. Co.*, 25 id., 562; *Malone* v. *Hathaway*, 64. id., 5, and 21 Am. Rep., 573, notes 580–581; *De Graff* v. *N. Y. C. and H. R. R. R. Co.*, 19 Alb. Law J., 134; *Davis* v. *Detroit R. R. Co.*, 4 Am. Rep., 364.) This presumption is not overcome and negligence inferred from the existence of a defect in the machine, although a servant may be injured in consequence of that defect. (*De Graff* v. *N. Y. C. and H. R. R. R. Co.*, 19 Alb. Law J., 134; Wood's Master and Servant, §§ 358, 419; *Terry* v. *N. Y. C. R. R.*, 22 Barb., 574; *Curran* v. *Warren Chem. and Manfg. Co.*, 36 N. Y., 153; *Mobile, etc., R. R. Co.* v. *Thomas*, 42 Ala., 672; *Baulec* v. *N. Y. C. and H.*

*R. R. R. Co.*, 59 N. Y., 356; *Hard* v. *Vt. and Canada R. R. Co.*, 32 Vt., 472.) There is no proof of any negligent act on the part of the general agent or master mechanic which can be imputed to the defendant. (*Rose* v. *B. and A. R. R. Co.*, 58 N. Y., 221; *Warner* v. *Erie*, 39 id., 475; *Columbus, etc., R. R. Co.* v. *Arnold*, 31 Ind., 174; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521, 527; *Allen* v. *New Gas Co.*, 17 Eng. Rep. [Moak's notes], 420.) A master is not liable to his servant for an injury sustained through the neglect of another servant. (*Coon* v. *Syracuse and Utica R. R.*, 5 N. Y., 492; *Sherman* v. *Rochester and Syracuse R. R. Co.*, 17 id., 153; *Laning* v. *N. Y. C. R. R. Co.*, 49 id., 521; *Malone* v. *Hathaway*, 64 id., 5.) If the servant sustaining an injury through defects in the machinery furnished by his employer has the same knowledge or means of knowledge of the defects referred to as his employer, he cannot maintain an action for the injury, but will be held to have voluntarily assumed all the risks of the employment incurred by the defective machinery used in the work. (*Priestly* v. *Fowler*, 3 M. & W., 1; *Keegan* v. *Western R. R. Co.*, 4 Seld., 175; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562; *Laning* v. *N. Y. C. R. R. Co.*, 49 id., 521; *Mehan* v. *Syracuse and Binghamton R. R. Co.*, Ct. of App. [4 Weekly Digest], No. 25, p. 588.) Defendant was bound to exercise only ordinary care. In examining machinery it was only bound to use such means and tests as were usual and ordinary. (*De Graff* v. *N. Y. C. and H. R. R. R. Co.*, 19 Alb. Law J., 134; *Wonder* v. *B. and O. R. R. Co.*, 3 Am. Rep., 143; *Warner* v. *Erie Railway Co.*, 39 N. Y., 468, 475.)

*Samuel Hand*, for respondent. A railroad company owes to his employees the duty of furnishing, maintaining, and keeping its operative machinery in good repair, so as to protect them against danger. (*Flike* v. *Boston and Albany R. R. Co.*, 53 N. Y., 549; *Lansing* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Wright* v. *N. Y. C. R. R. Co.*, 25 id., 565; *Con-*

*nelly* v. *Pollian*, 41 Barb., 369; 41 N. Y., 619; 5 M. H. & G., 352; 8 Allen, 441; *Plank* v. *N. Y. C. R. R. Co.*, 60 N. Y., 607; *Mehan* v. *The Syracuse, Binghamton and N. Y. R. Co.*, 73 id., 585; *Booth* v. *Boston and Albany R. R. Co.*, 73 id. 38; *Stevenson* v. *Jewett*, 16 Hun., 210; *Malone* v. *Hathaway*, 64 N. Y., 5; *Hawley* v. *The Northern Central Railway*, 17 Hun, 115; *Keegan* v. *The Western R. R. Co.*, 8 N. Y., 175; *Gage* v. *D. L. and W. R. R. Co.*, 14 Hun, 446.) It cannot be affirmed as matter of law, that an engineer while running an engine, has the same opportunity as the principal, or whatever subordinate may represent him, whose duty it is to keep the engine in repair, to ascertain and know of defects. (*Meehan* v. *S. B. and N. Y. R. R. Co.*, 73 N. Y., 585.) This case is within the rule established in this State upon the question of defective machinery, and contributory negligence. (*Meehan* v. *S. B. and N. Y. R. R. Co.*, 73 N. Y. 585; *Booth* v. *Boston and Albany R. R. Co.*, 73 id., 38; *Stevenson* v. *Jewett*, 16 Hun, 210; *Keegan* v. *Western R. R. Co.*, 8 N. Y. 175.) The evidence of the plaintiff's witnesses, and the magnitude of the defects, with the absence of any proof whatever from the defendant that the corroded sheets could not be detected, justified the jury in finding that a proper examination of the boiler by competent men had not been had. (*Wolfhiel* v. *The Sixth Av. R. R. Co.*, 38 N. Y., 49.) The negligence of an agent of a corporation, possessing the power and authority that Van Vechten did, is imputable to the principal, and any fault upon the part of such general agent is the fault of his principal. (*Malone* v. *Hathaway*, 64 N. Y., 9, 11; *Flike* v. *B. and A. R. R. Co.*, supra; *Laning* v. *N. Y. C. Co.*, id. ; *Meehan* v. *S. B. and N. Y. R. Co.*, id.; *Booth* v. *B. and A. R. R. Co.*, id., *Corcoran* v. *Holbrook*, 59 N. Y., 517; *Wright* v. *N. Y. C. R. R. Co.*, supra; *Frazier* v. *Penn. R. Co.*, 38 Penn. St., 104; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass., 572; *Stevenson* v. *Jewett*, supra; *Ryan* v. *Fowler*, 24 N. Y., 410.)

ANDREWS, J. The plaintiff's intestate, an engineer on the Erie Railway was killed on the 23d of July, 1875, by the explosion of the boiler of a locomotive engine, belonging to the company, which the intestate was running as engineer, at the time of the accident. The engine was examined after the explosion, and it was found that a number of stay-bolts in the left leg of the boiler were broken, and others were corroded by rust, and the outer sheet of the boiler through which the stay-bolts passed was eaten away by rust to the extent of from one-third to one-half its original thickness.

The evidence authorized the inference that the explosion was caused by the weakness of the boiler, resulting from the defective stay-bolts and the condition of the outer sheet. It did not definitely appear how long the defective condition of the boiler had existed. The ends of some of the broken stay-bolts, at the point where they were broken, were scaled over with rust, and experts testified that it would require some time for rust to eat away the iron to the extent disclosed by the examination. The engine was built in 1865, and had been in use on the railway from that time. In October, 1874, it was taken to the shops of the company for general repairs, and Van Vechten, the master mechanic in charge of the shops, gave directions for its thorough overhauling. The repairs were made by mechanics in the employment of the company, and in January, 1875, the repairs having been completed, the engine was again placed upon the road. But after this, the engine was frequently reported by Fuller, the engineer, to be out of order, and in each month subsequent to January, 1875, to the time of the explosion, except in June, repairs were made thereon. In April, the engineer reported that the stay-bolts in the right leg of the boiler were broken, which report on examination was found to be true, and the broken stay-bolts were replaced by new ones. When the general repairs were made in October 1874, the mechanics who had charge of the repairs examined the boiler to ascertain whether any of the stay-bolts were defective, but they found none. This examination however

was substantially confined to an inspection of the outer sheets of the boiler, to discover any indication of weakness and to hammering on some of the bolts to ascertain whether they were broken. But they made no examination of the interior of the legs of the boiler by the use of lights, as was practicable and usual in case of general repairs, as some of the witnesses testified.

It is quite clear upon the evidence, that the boiler was in a dangerous condition at and prior to the time of the explosion. The jury were authorized to find that the defects existed to a greater or less extent at the time the engine was taken to the shops in October, 1874, and that the mechanics to whom Van Vechten had committed the duty of making the necessary repairs, negligently omitted the use of usual and proper means to ascertan the existence of the defects, and that if such means had been used, the weakened and unsafe condition of the boiler would have been discovered. There was no negligence on the part of Van Vechten the master mechanic in charge of the shops. He gave proper instructions for the thorough examination and repair of the engine and boiler. It was impracticable for him to make personal examination of all the engines which came to the shops for repairs. The subordinates to whom he committed that duty in this case, were compe· tent from their character and experience to perform it. Nor was there any negligence on the part of the company in the employment of Van Vechten as general superinten- dent of repairs, or in omitting to make suitable regulations for the conduct of this business. Van Vechten was a man fully qualified for his position. The immediate negligence in this case was that of the mechanics to whom the doing of the repairs was committed, in omitting the duty of thorough inspection and examination as directed by Van Vechten.

Upon this state of facts, the question arises as to the liability of the defendant. It is claimed that the negli- gence of the mechanics was the negligence of co-employees

with the intestate, in the service of the company, for which the defendant the common employer is not responsible.

We are of opinion that the cases of *Flike* v. *Boston and Albany Railroad Company* (53 N. Y., 549); *Booth* v. *Same* (73 id., 38); and *Mehan* v. *Syracuse, Bing. and New York Railroad Company* (73 id., 585); are decisive against this contention. We understand the principle of these cases to be, that acts which the master, as such, is bound to per-form for the safety and protection of his employees, cannot be delegated so as to exonerate the former from liability to a servant, who is injured by the omission to perform the act or duty, or by its negligent performance, whether the non-fea-sance or mis-feasance is that of a superior officer, agent, or ser-vant, of a subordinate or inferior agent or servant to whom the doing of the act, or the performance of the duty has been committed. In either case in respect to such act or duty, the servant who undertakes, or omits to perform it, is the representative of the master, and not a mere co-servant with the one who sustains the injury. The act or omission is the act or omission of the master irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to act personally or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise to secure the safety of his employees.

It is sometimes difficult to determine what is the master's duty, within the rule. But when it is ascertained that the negligence by which an employee is injured relates to this duty, then there is no middle ground, and the case cannot be determined upon any distinction founded upon the par-ticular grade, office, or function of the negligent servant or agent. In the *Flike case*, it was probably impracticable for Rockefeller to be present at the starting of each train, and to see personally that when it left the yard it had its full equipment of men. He appointed sufficient brakemen to go with the train which parted and caused the injury, and one of them neglected to go. The negligence of the com-

pany consisted in not seeing to it, that the train was sufficiently manned, when it started, and it did not excuse itself by showing that it had promulgated proper rules and appointed a head conductor of this business, or that the train would have been fully manned, if Loftus, the brakeman, had performed his duty. In this case the neglect to maintain the engine in proper repair, was the neglect of a duty devolving upon the master. The duty of maintaining machinery in repair for the protection and safety of employees, is the same in kind as the duty of furnishing a safe and proper machine in the first instance. (*Ford* v. *Fitchburg R. R. Co.*, 110 Mass., 240.)

But the duty of the master to furnish suitable and safe machinery, and to keep the same in repair, is relative and not absolute. He is only bound by himself and his agents to exercise due care to that end. In this case the jury have found upon sufficient evidence that there was negligence in respect to the inspection and repair of the boiler, and we think the judgment must be affirmed.

The case of *Malone* v. *Hathaway* (64 N. Y., 5), contains a valuable discussion of the law of master and servant, and of the rules regulating the liability of the former for an injury to an employee by the negligence of a co-servant. That case was not intended, as the opinion states, to interfere with the principle established in the *Flike case.*

We have examined the exceptions to evidence, and do not find any which call for a reversal of the judgment.

All concur except FOLGER, J., not voting.

Judgment affirmed.